# Alexander *et al. v.* Goetz, *et al.*

*Bill to determine Claims to Real Estate and to quiet Title Thereto.*

1. *Vendor and purchaser; rights under a contract for sale of interest in lands.*—After executing a mortgage upon certain lands, the owner thereof entered into a valid agreement with certain named persons to convey an undivided interest in said lands to them. The mortgage was subsequently foreclosed under a decree in a forecloeure suit in equity. Thereafter the mortgagor, by warranty deed, conveyed all of his interest in and to said lands to the complainants in the present suit. The mortgagor, after the sale under the decree of foreclosure, redeemed the property from the pruchasers at the forclosure sale. *Held*: That the complainants, having notice of the agreement of the original owner to convey an undivided interest in the land, are not entitled to a decree that the other parties to said agreement have no interest in said lands.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOMAS H. SMITH.

The bill in this case was filed by the appellants against the appellees. The purpose of the bill and the facts of the case are sufficiently stated in the opinion. On the final submission of the cause upon the pleadings and proof, the Chancellor decreed that the complainants were not entitled to the relief prayed for, and further, that the defendants, W. C. Nichols, H. K. Curtis and H. L. Halverson were entitled to an undivided half interest in the lands, under and by virtue of the contract which they had entered into with W. C. Raynor for the purchase thereof. From this decree the complainants appeal, and assign the rendition thereof as error.

McINTOSH & RICH, for appellants.—It has been held in this State that to authorize specific enforcement of an agreement to sell lands all of the terms of the agreement must have been agreed upon, leaving nothing for

[Alexander *et al.* v. Goetz, *et al.*]

further negotiation.—*Alba v. Strong*, 94 Ala. 163 *et seq;* 22 Am. & Eng. Ency. (1st ed.) p. 1003; *Derrick v. Monette*, 73 Ala. 75 *et seq.* The court will not grant specific performance when, by the terms of the contract itself, the defendant would, be entitled at any time to terminate the agreement and thus evade the decree. Illustration: Partnership agreements will not, except in some exceptional cases, be thus enforced.—3 Pomeroy's Equity Jurisprudence, 449.

C. J. TORREY, *contra.*—The contract in this case was duly and properly executed so as to amount to a valid agreement to convey an interest in said land in accordance with the terms of said contract.—*Riddle v. Brown*, 20 Ala. 412; *Clanton v. Scruggs*, 95 Ala. 279.

It is clear that appellants hold subordinate to the equitable right or interest created by said contract and which was vested in appellees, unless they were *bona fide* purchasers for value without notice, and the burden of proof is on them to show this. That said contract of June 8th, 1900, vests an equitable right or interest in or charge upon said land, being properly executed. *Riddle v. Brown*, 20 Ala. 412; *Clanton v. Scruggs*, 95 Ala. 279.

HARALSON, J.—The bill was filed by G. L. Alexander and four others, against W. C. Nichols, H. K. Curtis, H. L. Halverson, and four others, to quiet the title to the lands mentioned in the bill, lying and being in Baldwin county, Alabama. It is alleged that the defendants, or some of them, claim or are reputed to claim some right, title or interest in or incumbrance upon said lands, and called on them to propound their claim thereto, if they had any, to said lands.

The bill appears to have been properly filed under sections 809, 813 of the Code, and its sufficiency as such a bill, is not in any wise questioned by defendants. Its evident purpose was,—for complainants very well knew what the claim of defendants was—to have the court declare void as to them a certain executory contract to sell the lands described in the bill, wherein one W. C. Raynor bound himself in a written obliga-

tion duly executed,—in such manner as to amount to a valid agreement to convey an interest in said lands according to the terms of the contract,—to convey to defendants, Nichols, Curtis and Halverson, the lands described.

A decree *pro confesso* was entered against all the defendants, except Nichols, Curtis and Halverson, who filed their answer, and afterwards a cross bill, in which they sought to have specifically enforced and performed the said executory contract above referred to, between themselves and said W. C. Raynor.

The cross-bill was demurred to on many grounds and the demurrer was sustained. We have nothing to do, therefore, with the cross-bill on this appeal, except as it may be important to make incidental reference thereto, in considering the appeal in the main case.

The only defense set up by the defendants grew out of said executory agreement between W. C. Raynor, of the first part, and H. L. Halverson, W. C. Nichols and H. K. Curtis, of the second part, of date, 8th of June, 1900, wherein, in consideration of the covenants and agreements therein contained and to be perfomed by the parties of the second part, the said W. C. Raynor, (who was the owner of the land mentioned in the agreement), agreed to convey to the parties of the second part,—quoting its language,—"by a good and sufficient deed of warranty an undivided one-half interest, upon demand at any time within sixty days from and after the date hereof, in and to all lands upon which is contained a mineral deposit similar to or known as Fuller's earth in the west half of section thirty (30) in Township three (3) south, Range two (2) east, the same being situated on the east bank of the Tensas river, near the old town of Blakely, in the county of Baldwin, in the State of Alabama, such land so to be conveyed to contain all land owned by me in the State of Alabama upon which is contained any of such mineral deposit, upon the execution by the parties of the first and second part of articles of copartnership for the erection of machinery, buildings and other devices upon such land for the production, sale and shipment of said deposits of Fuller's earth and upon compliance

with such articles of copartnership, which shall provide a capital stock of $3,000.00 to be paid by the parties of the second part into the partnership fund to be used for the partnership purposes only, and which articles of co-partnership shall provide for the payment to the party of the first part of the sum of $4,000.00 ut of the partnership profits of the parties of the second part, the profits and losses of such copartnership to be borne equally between the party of the first part on one side and the parties of the second part on the other side, that is to say, the party of the first part shall be entitled to one-half of the profits of such copartnership business and shall bear one-half of the expenses and losses of such business, and the parties of the second part shall collectively be entitled to one-half of the profits, and shall collectively bear one-half of the expenses and losses of such copartnership," etc.

"The parties of the second part in consideration of the foregoing, agree to investigate the amount and quality of any deposit of Fuller's earth represented to be contained on such land so to be conveyed, and if after such investigation they shall be satisfied and convinced that such land contains such deposit thereon in such amount and of such quality as to convince them that the same may be produced and sold at a considerable profit, then and in such case, they, the parties of the second part, will comply with the conditions herein contained and execute such articles of copartnership and pay the capital into the partnership fund herein provided."

The proof in the case tended to show what had appeared in the cross-bill, that on June 8th, 1900,—the date of said contract,—one W. C. Bronson held a mortgage from said W. C. Raynor, the original owner, made when the complainants derived and claimed title, to the lands mentioned in said contract, and that he, the said Bronson, had, prior thereto, filed a bill in the chancery court of Baldwin county, against said Raynor, to foreclose said mortgage; that a decree of foreclosure was duly made in the cause, and Bronson became the purchaser of the land at the foreclosure sale; that thereafter, in the Fall of 1901, said

Bronson sold and conveyed said lands to N. M. Little-john and M. C. Halverson, who purchased the same from him, and that on the 9th of November, 1901, said Little-john and Halverson conveyed the same to complainants in the original bill. It is also shown that W. C. Raynor parted with all his interest in and to said lands,—which was the right of redemption merely,—by warranty deed dated September 27th, 1901, to the complainants. But said Raynor had already agreed to convey the lands to the defendant by said agreement of the 8th of June, 1900. They thus acquired rights superior to any right of complainants, which they assert under their subse-quent deed from Raynor, executed on September 27th, 1901.

It is averred in the answer of defendants, that com-plainants, at the time they acquired this deed from Lit-tlejohn and Halverson, had knowledge of the existence of said agreement of the 8th of June, 1900, between Ray-nor and defendants. The contention on the part of the defendants is, that having such notice complainants purchased said property subject to defendants right in said land, which is averred to be superior to that of com-plainants. The evidence is satisfactory to show, that complainants at the time they received their deed from Raynor, on September 27th, 1901, were informed and had knowledge of said contract of June 8th, 1900, by Raynor to defendants. The answer of complainants to the 9th paragraph of defendant's cross-bill, which may be looked to as evidence of an admission by them, shows that they saw on the records of the probate court, the record of this contract, and they distinctly admit that in so far as the record advised them, they had knowledge of all the provisions contained in said contract of June 8th, 1900. Moreover, the complainant, Alexander, him-self, testified on his cross-examination, that prior to the time he and his associates bought the land from Raynor, in September, 1901, they had knowledge and informa-tion in regard to the contract between Raynor and Nich-ols, Halverson and Curtis, with whom said Raynor made said contract of June 8th, 1900. Other evidence tended to show the same fact, and it cannot be held, so far as

that fact is important to be considered, the complainants were purchasers for value without notice of the equity of defendant's claim in said lands.

The evidence is reasonably satisfactory to show, that Raynor redeemed the lands from the purchasers under the Bronson mortgage. N. M. Littlejohn, one of the purchasers from Bronson testified that on the 9th of November, 1901, Alexander and one Brown came to him and M. G. Halverson, his copurchaser from Bronson, and said that they came as the attorneys or agents of W. C. Raynor to redeem the land in question from the mortgage sale; that they tendered the amount due with interest in gold up to that date, and said it was Raynor's money, and tendered it to them for the redemption of the lands in question, and demanded that they redeem the lands to W. C. Raynor, and that they accepted the money and executed the deed. M. G. Halverson and J. N. Thiele, who were present, testified to the same thing. When the right of redemption was exercised by Raynor, the title to the lands was revested in him, the same as if the Bronson mortgage had never existed, and his rights after his exemption, were subject as has been stated, to his contract with defendants, and to their rights acquired thereunder. The complainants can occupy no better position than Raynor would if he had filed this bill, and so far as they are concerned, the bill will be treated as Raynor's'. If defendant's performed this part of said contract, or did all they reasonably could to perform it, and were prevented by Raynor, then Raynor would be bound as would defendants complainants also, standing in his stead.

Again the evidence satisfactorily shows that within the 60 days limit in their contract with Raynor, defendants performed, or offered to perform all that they were required to do according to the terms of their said agreement, and Raynor refused to comply with his part of the same, and repudiated it. The witnesses, W. C. Nichols, H. K. Curtis, H. L. Halverson and J. H. Estes, the last being disinterested, are convincing to show that defendants, on August 6th, 1900, did all that could reasonably and legally be required of them to carry out

their contract, and Raynor said that he would not execute the same except upon payment of $4,000.00, not stipulated for under the agreement.

Raynor cannot be allowed in equity to repudiate his contract, nor can complainants, occupying his place under its terms, without better grounds than are shown.

It may be added, that if defendants should deem it necessary to file a bill against Raynor and complainants, in order to enforce performance of said contract of the 8th of June, 1900, if they are entitled thereto, that would constitute no satisfactory reason for decreeing the relief prayed for in this case by complainants. We do not intimate what would be the result of such a suit.

The chancellor decreed that the defendants, W. C. Nichols, H. K. Curtis and H. L. Halverson are entitled to an undivided half interest in the lands, under contract with said W. C. Raynor, of which complainants had notice and they are not entitled to relief against them.

As to the other defendants it was held that they had no rights or interest in said lands.

Affirmed.

McCLELLAN, C. J., DOWDELL and DENSON, J. J., concurring.